# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PRIME FOODS FOR PROCESSING AND TRADING,<br><br>Plaintiff,<br><br>vs.<br><br>GREATER OMAHA PACKING CO., INC.,<br><br>Defendant. | 8:19CV73<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion to Dismiss, ECF No. 7, filed by Defendant Greater Omaha Packing Co., Inc. For the reasons stated below, the Motion will be granted, and Counts I and II of the Complaint, ECF No. 1, will be dismissed, with prejudice.

## BACKGROUND

The following facts are those alleged in the Complaint and assumed true for purposes of the pending Motion to Dismiss.

Plaintiff Prime Foods for Processing and Trading (Prime Foods) is an Egyptian retail seller of beef products that purchased beef from Defendant Greater Omaha Packing Co., Inc. (Omaha Packing) on multiple occasions. Each of the transactions was completed in the following manner: Prime Foods placed an order by email; Omaha Packing emailed Prime Foods an invoice with wire-transfer instructions; and Prime Foods wire-transferred its payment in accordance with the instructions and banking information provided by Omaha Packing.

On September 12, 2017, Hatim Badawi, chairman of Prime Foods, emailed Mark Spengler, an Omaha Packing sales representative, to confirm an order and the amount of payment due. Spengler then sent an email to Carol Mesenbrink, an Omaha Packing account manager, instructing her to email Badawi the order invoices along with wire-transfer instructions. Badawi did not receive the invoices from Mesenbrink. Instead, on September 13, 2017, a third-party identity thief using a fraudulent email address nearly identical to Mesenbrink's email address[1] interfered in the transaction by sending Badawi invoices that accurately reflected the details of Prime Foods' order but directed the wire-transfer to a fraudulent Bank of America bank account owned by Greater Omaha Packing Inc.—a name nearly identical to Defendant Omaha Packing's official business name, Greater Omaha Packing Co., Inc. Compl. ¶ 27, ECF No. 1, Page ID 5.

On September 14, 2017, in accordance with the directions in the fraudulent email, Prime Foods wired $104,572.50 to the fraudulent Bank of America bank account. That same day, Badawi sent email attachments to the fraudulent email address that confirmed Prime Foods' wire transfer. He also forwarded this communication to Spengler. In his response, Spengler notified Badawi that Mesenbrink's email address was misspelled, and Badawi re-sent the attachments to Mesenbrink's correct email address. Badawi also explained to Mesenbrink that her email address was misspelled in the email he received on September 13, 2017. On September 26, 2017, Mesenbrink emailed Omaha Packing's customers notifying them that Omaha Packing had become aware of an attempt by a third party to redirect wire-transfer payments using a fraudulent email address.

---

[1] Mesenbrink's actual email address was carol@gr<u>ea</u>teromaha.com. The fraudulent email address used by the identity thief was carol@gr<u>ae</u>teromaha.com.

Ultimately, Omaha Packing and Prime Foods discovered that the $104,572.50 wire transfer was fraudulently directed to the account established by the identity thief, and the parties have not recovered the money. Prime Foods paid the $104,572.50 to Omaha Packing and brought this action against it[2] on February 13, 2019. "Count I" of the Complaint is titled "Negligence" and alleges Omaha Packing failed to "safeguard Prime Foods' information and inside company information regarding pending transactions . . . ." Compl. ¶ 62, ECF No. 1, Page ID 10. "Count II" is also titled "Negligence" and alleges Omaha Packing failed to "notify [Prime Foods] or [ ] Bank of America immediately about the fraudulent transactions in order to intercept the wire transfers . . . ." *Id.* at ¶ 67, Page ID 11.[3] Counts III and IV allege breaches of the implied warranties of merchantability and fitness for a particular purpose regarding other, unrelated orders. Omaha Packing moves the Court to dismiss Counts I and II because it owed Prime Foods no legal duty.

**STANDARD OF REVIEW**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

---

[2] Prime Foods initially sued Omaha Packing, Bank of America, and the fraudulently created corporation, Greater Omaha Packing, Inc., in the U.S. District Court for the District of Maryland. The District of Maryland dismissed Omaha Packing for lack of personal jurisdiction.

[3] Prime Foods does not allege that Omaha Packing breached a contractual duty—express or implied—with respect to the September 2017 transaction, and Omaha Packing does not argue that the economic loss doctrine applies in this case. *See generally Lesiak v. Cent. Valley Ag Co-op, Inc.*, 808 N.W.2d 67, 83 (Neb. 2012) (discussing the economic loss doctrine).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

"The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff." *Bell v. Grow With Me Childcare & Preschool LLC*, 907 N.W.2d 705, 713 (Neb. 2018).[4] "A 'duty' is an obligation, to which the law gives recognition and effect, to conform to a particular standard of conduct toward another." *Olson v. Wrenshall*, 822 N.W.2d 336, 341 (Neb. 2012). "The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation." *Bell*, 807 N.W.2d at 713. It is the plaintiff's burden to show the existence of a legal duty. *See Rodriguez v. Catholic Health Initiatives*, 899 N.W. 2d 227, 235 (Neb. 2017).

Prime Foods' negligence claim is based on Omaha Packing's alleged failure to prevent economic harm intentionally inflicted by a third-party. The Nebraska Supreme Court has not addressed the legal duty, if any, a commercial seller like Omaha Packing owes a commercial customer like Prime Foods to prevent such harm, and "[w]hen a state's highest court has not spoken on an issue, a federal court must predict what the state court would do if it were called upon to decide the issue." *Qwest Commc'ns Corp. v. Free Conferencing Corp.*, 837 F.3d 889, 898 (8th Cir. 2016) (citing *Nw. Mut. Life Ins. Co. v. Weiher*, 809 F.3d 394, 397 (8th Cir. 2015)). Federal courts "may consider 'relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data.'" *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011) (quoting *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1268 (8th Cir. 1997) (alteration in original)).

---

[4] It appears the parties agree Nebraska law applies, and neither party argues for the application of another state's law. Thus, the Court will apply Nebraska law. *See BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003) (applying the law of the forum where the parties did not argue for the application of a different state's law).

In Nebraska, "[d]uty rules are meant to serve as broadly applicable guidelines for public behavior, *i.e.*, rules of law applicable to a category of cases." *Rodriguez*, 899 N.W.2d at 235. Thus, courts must be "mindful of the fact that the determination of a legal duty is fundamentally based in public policy considerations and that it is generally the function of the legislature to declare what is the law and public policy of this state." *Olson*, 822 N.W.2d at 452-53 (citing *Munstermann ex rel. Rowe v. Alegent Health-Immanuel Med. Ctr.*, 716 N.W.2d 73, 84 (Neb. 2006)). When asked to recognize a new legal duty, the Nebraska Supreme Court considers whether the parties have identified a relevant statute that is "clearly indicative of legislatively approved public policy." *Munstermann*, 716 N.W.2d at 84. Absent such a statute, courts should be reluctant to recognize a new legal duty. *Olson*, 822 N.W.2d at 342 (stating "we are reluctant to create or define a new legal duty" where no relevant statute establishing state public policy was presented).

The parties discussed the statutes in the Financial Data Protection and Consumer Notification of Data Security Breach Act of 2006 (Data Protection Act), Neb. Rev. Stat. § 87-801 *et seq.*,[5] and agree those statutes do not apply to the facts of this case. Pl.'s Br., ECF No. 15, Page ID 110; Def.'s Br., ECF No. 8. Although it is not necessary that statutes be "literally applicable" to be clearly indicative of Nebraska public policy, *Munstermann*, 716 N.W.2d at 84, Prime Foods made no argument that the Data Protection Act or any

---

[5] Prime Foods argues that the Data Protection Act violates the "Privileges and Immunities Clause of the Fourth Amendment [*sic*] of the United States Constitution." Pl.'s Br., ECF No. 15, Page ID 112. The Privileges *and* Immunities Clause is from Article IV, Section 2 of the U.S. Constitution, and the Privileges *or* Immunities Clause is from the Fourteenth Amendment to the United States Constitution. It is not necessary for the Court to address this argument.

6

other statute is indicative of state public policy. Accordingly, this Court is reluctant to recognize a new legal duty in this case. *See Olson*, 822 N.W.2d at 342.

This Court recently addressed the legal duty a bank owed to a non-customer to prevent economic harm intentionally inflicted by a third-party, fraudulent actor. *Ameritas Life Ins. Corp. v. Bank of Am., N.A.*, No. 4:17-CV-3128 (D. Neb. filed Jan. 31, 2018);[6] *see also Ameritas Life Ins. Corp. v. J.P. Morgan Chase & Co.*, No. 4:17-CV-3127 (D. Neb. filed Feb. 14, 2018).[7] This Court predicted that the Nebraska Supreme Court would adopt the rules stated in Restatement (Third) of Torts: Liability for Economic Harm §§ 5(1) (Tent. Draft No. 1, Apr. 4, 2012) (negligent misrepresentation) & 6(1) (Tent. Draft No. 2, Apr. 7, 2014) (negligent performance of services) and concluded that the bank owed no duty to the non-customer under those rules.[8]

The tentative draft of the Restatement (Third) starts from the position that "[a]n actor has no general duty to avoid the unintentional infliction of economic loss to another." Restatement (Third) of Torts: Liability for Economic Harm § 1 (Tent. Draft No. 1, Apr. 4, 2012). This Court predicts that the Nebraska Supreme Court would take the same initial approach. *See Ameritas*, No. 4:17-CV-3128; *Ameritas*, No. 4:17-CV-3127; *Cf. Bell*, 907 N.W.2d at 716-17 (explaining, in the physical-harm context, Nebraska law "does not recognize a universal duty to exercise reasonable care to all others in all circumstances.").

---

[6] The Honorable Richard Kopf, Senior United States District Judge for the District of Nebraska.

[7] The Honorable John Gerrard, Chief United States District Judge for the District of Nebraska.

[8] This Court recognizes that the *Ameritas* cases are arguably distinguishable from the facts of this case because the plaintiffs in those cases were non-customers lacking a preexisting relationship with the defendant-banks, whereas Prime Foods purchased beef from Omaha Packing on multiple occasions prior to the fraudulent transaction at issue in this case.

In the physical-harm context, if the defendant's affirmative conduct did not create a risk of harm, Nebraska law does not impose a duty of care absent a special relationship. *Bell*, 907 N.W.2d at 718. Omaha Packing's conduct did not create a risk of harm. *See id.* ("When the only role of the actor is failing to intervene to protect others from risks created by third persons, the actor's nonfeasance cannot be said to have created the risk."). Thus, this Court also predicts the Nebraska Supreme Court would require some special relationship or circumstances before imposing a duty of care upon Omaha Packing.

Omaha Packing had no relationship to the third-party fraudulent actor in this case, but it did have a commercial buyer-seller relationship with Prime Foods. Rather than focus on the nature of the relationship between Omaha Packing and Prime Foods or any other special circumstances which may justify a legal duty, Prime Foods cites *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019) (applying Georgia law) and *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. 2014) (applying California and Massachusetts law) where the courts found the defendants had a common-law duty to protect the personal information—addresses, birth dates, credit/debit card numbers, social security numbers, etc.—collected from individual consumers. Although in cases of first impression the Nebraska Supreme Court will sometimes review case law from other jurisdictions for guidance, *see, e.g.*, *State v. Pangborn*, 836 N.W.2d 790, 799 (Neb. 2013); *Strode v. City of Ashland*, 886 N.W.2d 293, 304 (Neb. 2016), those cases are distinguishable. *In re Sony* and *In re Equifax* dealt with the defendants' duty to protect the personal consumer and identification information they collected from individual customers, while this case involves Omaha Packing's duty to protect the information exchanged with another entity

8

in a commercial transaction. Prime Foods did not address this distinction and provided no argument as to why the Nebraska Supreme Court would be inclined to rely on those cases to recognize a new legal duty in this case.

Prime Foods also cites *Wines, Vines and Corks, LLC v. First Nat'l of Neb, Inc.*, 8:14CV82, 2014 WL 12665802 (D. Neb. Aug. 20, 2014) where this Court found the plaintiffs stated a negligence claim by alleging that the defendant-bank failed to use reasonable care in protecting the plaintiffs' account information from third-party theft, collection, or misuse. However, that conclusion was reached without discussion of whether such a legal duty had been recognized under Nebraska law or whether the Nebraska Supreme Court would recognize such a duty for the first time. *Id.* at *5. Therefore, the case is not helpful in predicting whether the Nebraska Supreme Court would do so now.

Next, Prime Foods notes the Nebraska Supreme Court recognized a duty to protect financial information in *Schoneweis v. Dando*, 435 N.W.2d 666 (Neb. 1989), and a duty to disclose information materially affecting a business transaction in *Streeks, Inc. v. Diamond Hill Farms, Inc.*, 605 N.W.2d 110 (Neb. 2000), *overruled in part by Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 334 (Neb. 2010). See Pl.'s Br., ECF No. 15, Page ID 115-17. The facts of those cases differed from those here, and the Nebraska Supreme Court did not recognize any legal duty that would apply here.

Prime Foods also argues that Omaha Packing owed it a professional duty of care, but Omaha Packing did not provide a professional service. *See, e.g.*, *Bixenmann v. Dickinson Land Surveyors, Inc.*, 882 N.W.2d 910, 916 (Neb. 2016); *Churchill v. Columbus Cmty. Hosp., Inc.*, 830 N.W.2d 53, 58-9 (Neb. 2013).

9

Finally, Prime Foods argues it can recover under agency law and/or the Uniform Commercial Code. *See generally Beau Townsend Ford Lincoln, Inc. v. Don Hinds Ford, Inc.*, 759 F. App'x 348, 353 (6th Cir. 2018) (applying Ohio law and stating the case could be evaluated under contract law or agency law). Omaha Packing did not address these arguments, and its Motion only seeks dismissal of Prime Foods' negligence claims. Further, the Complaint does not allege a breach of a duty arising under contract or an agency relationship. Nor did Prime Foods provide any support for these theories of recovery under Nebraska law. Thus, the Court need not address this argument.

Ultimately, Prime Foods failed to provide any public policy or other reliable theory suggesting that the Nebraska Supreme Court would recognize a new legal duty in this case. Therefore, this Court predicts that the Nebraska Supreme Court would dismiss Prime Foods' negligence claims because Omaha Packing owed Prime Foods no duty of reasonable care under Nebraska tort law. Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss, ECF No. 7, filed by Defendant Greater Omaha Packing Co., Inc., is granted;

2. Count I and Count II of the Complaint are dismissed, with prejudice; and

3. Defendant Greater Omaha Packing Co., Inc., will respond to the remainder of the Complaint on or before June 19, 2019.

Dated this 4th day of June 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge